## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

JOSEPH PAUL MARCHESSAULT,

      Debtor.

Case No. 6:08-bk-02174-ABB
Chapter 7

_____/

JACK DURIE, JR.,

      Plaintiff,

Adv. Pro. No. 6:08-ap-00124-ABB

vs.

JOSEPH PAUL MARCHESSAULT,

      Defendant.

_____/

### MEMORANDUM OPINNION

This matter came before the Court on the First Amended Objection to Debtor's Bankruptcy Based on False Pretenses, False Representations, and Actual Fraud (Doc. No. 45) ("Objection") filed by Jack Durie, Jr., the Plaintiff herein ("Plaintiff") against Joseph Paul Marchessault, the Debtor and Defendant herein ("Debtor"). The Plaintiff requests a debt arising from two loans made to the Debtor be deemed nondischargeable. This matter is an 11 U.S.C. Section 523(a)(2)(A) cause of action. Also before the Court are the parties' motions seeking sanctions against each other and various submissions presented by the parties in violation of the Court's filing injunction.

The final evidentiary hearing was commenced on May 21, 2009 and concluded on July 16, 2009 at which the parties appeared without counsel. The indebtedness of $15,000.00 relating to the March 2007 loan is due to be deemed nondischargeable. The

sanctions motions are due to be denied and parties' submissions made in violation of the filing injunction shall not be considered. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Background*

This adversary proceeding has been highly contentious and unfocused. The parties have been hostile towards each other and the Court. Neither party has abided by the Court's Orders or the procedural rules. The Plaintiff, despite having practiced law for more than thirty years, has been disrespectful to the Court, repeatedly ignored the Court's directives, and failed to follow the most basic trial procedures.

The parties' hostility towards each other escalated during the discovery process. The Plaintiff bombarded the Debtor with extensive discovery requests designed primarily to harass and embarrass the Debtor. The Debtor retaliated by refusing to respond to the discovery requests or providing nonresponsive answers. They made scurrilous statements against one another. Their conduct was outrageous.

The parties were perverting the discovery process. The core purpose of discovery, to expose the facts and illuminate the issues, was not being accomplished.[1] The Court curtailed discovery and enjoined the parties from communicating with each other and filing any documents without leave of Court. This adversary proceeding was set for trial in an attempt to bring an orderly and civil conclusion to this matter.

---

[1] FED. R. CIV. P. 26 advisory committee's note.

The facts are not clear. The parties presented conflicting accounts of their interactions and understandings. Both parties lack credibility and their testimony was often evasive. Their dealings are undocumented. The actual amount of debt at issue is unclear. Conflicting figures of $165,000.00 and $155,000.00 have been presented as the indebtedness at issue. The Court has struggled to decipher the facts.

### The $100,000.00 Loan

The *pro se* Debtor is self-employed and has been engaged in various businesses including real estate investment, internet sales, and motivational presentations. He conducts some of his business transactions through his company Sweet Oak Investments, LLC (the "LLC"). The Plaintiff asserts a $155,000.00 debt owed to him by the Debtor is nondischargeable. [2] The debt arises from two loans made by the Plaintiff to the Debtor: (i) a $100,000.00 loan in December 2006; and (ii) a $55,000.00 loan in March 2007. The Plaintiff contends the Debtor fraudulently induced him to make the loans.

The parties met at a networking function in Orlando in late 2006 and discussed real estate investment opportunities. The Plaintiff agreed to loan the Debtor $100,000.00 to acquire a residential investment property. The Debtor agreed to grant the Debtor a security interest in the property and to repay the loan with fourteen to fifteen percent interest. The loan, despite the Plaintiff's legal background, was not documented. All communications regarding the loan terms, its purpose, and the parties' intentions were verbal.

The Plaintiff obtained $165,000.00 through a home equity loan and placed the loan proceeds in his trust account. He transferred $100,000.00 to the Debtor in

---

[2] The Plaintiff is inconsistent in his Objection regarding the total debt at issue. He alleges $155,000.00 and $165,000.00 as the nondischargeable debt amounts.

December 2006.  The Debtor used the $100,000.00 to acquire a residential property located in Osceola County at 507 North Emory Avenue, Kissimmee, Florida 34741 (the "Property") on December 15, 2006 pursuant to a Trustee's Deed.[3]

Title to the Property is held in the name of a trust, 507 Emory Avenue Trust ("Trust"), with Carolyn Segraves, a/k/a Carolyn Seagraves ("Segraves"), named as Trustee.[4]  Segraves is the Debtor's former girlfriend and the Debtor or the LLC is the beneficiary of the Trust.

The Debtor recorded a Mortgage Deed in the Official Record Book of Osceola County, Florida on February 14, 2007 at Book 3409, Page 0040 granting the Plaintiff, as Mortgagee, a purchase money first priority mortgage of $165,000.00 on the Property.[5] Segraves, as Trustee of the Trust, was named the Mortgagor.  The address listed in the Mortgage Deed for the Plaintiff of 2900 East Silver Star Road, Suite 103, Ocoee, Florida 34761 is not the Plaintiff's address.  The business address of the Debtor's LLC is on East Silver Star Road in Ocoee, Florida.[6]

The Mortgage Deed provides: "This is a balloon mortgage and the final principal payment or the principal balance due upon maturity is $165,000.00 together with accrued interest, if any, and all advancements . . . ." and references a Note.[7]  The parties did not execute a note relating to the first loan. The Plaintiff provided only the first page of the Mortgage Deed.

---

[3] Plaintiff's Ex. No. 2.
[4] Id.
[5] Id.
[6] Plaintiff's Ex. No. 7.
[7] Id.

4

The Debtor did not inform the Plaintiff of the acquisition of the Property, the titling of the Property in the name of the Trust, or the Plaintiff's security interest in the Property. He did not disclose his interest in the Trust or the Property in his Schedules (Main Case Doc. No. 1). The Plaintiff only became aware of the Property and his security interest in the Property through pre-petition State Court litigation.

The Debtor made monthly interest payments on the $100,000.00 loan to the Plaintiff for a period of time.

### The $55,000.00 Loan

The Debtor approached the Plaintiff in early 2007 and asked the Plaintiff to loan him funds to be used for his growing real estate investment business. The Debtor represented the loan would be used for business costs including the hiring of an office assistant. The parties intended the loan to be unsecured. The Debtor agreed to pay interest on the loan at the rate of sixteen percent. The increased interest rate was to compensate the Plaintiff for the risk factor associated with the loan's unsecured nature.

The Plaintiff, relying on the Debtor's representations and understanding the funds would only be used for business expenses, wire transferred $55,000.00 to the Debtor on March 14, 2007.[8] The Debtor executed a Promissory Note dated March 14, 2007 in favor of the Plaintiff for the principal amount of $55,000.00 plus interest at sixteen percent per annum. Interest only payments of $733.33 were to commence on April 14, 2007 and the loan term was twenty-four months. The Note provides:

---

[8] Plaintiff's Ex. No. 3.

5

In addition, Borrower agrees to pay Lender $500.00 for each house Borrower's Company Sweet Oak Investments LLC sells during the term of the Note until such time as the entire principal has been paid in full. This additional consideration shall be due to Lender's equity participation with respect to Borrower's real estate ventures and not considered as interest hereunder.

. . .

Borrower further agrees to designate Lender as a beneficiary of a life insurance policy thereof up to the amount of the unpaid balance of this Promissory Note during such term as the Promissory Note remains unpaid. A copy of the life insurance policy together with the appropriate beneficiary designations will be provided to Lender prior to the funding of the Promissory Note.[9]

The Debtor asserts the Note was not executed on March 14, 2007, but on a later date and was executed under duress upon threats of bodily harm made by the Plaintiff against him.

### Payments and State Court Litigation

The Debtor, through the LLC, leased the Property to tenants who were paying rent of $700.00 per month to the LLC. The Debtor made monthly interest payments on the loans to the Plaintiff through October 2007 and then ceased making payments.

The Plaintiff made accounting and payment demands upon the Debtor.[10]  He instituted a State Court action in Orange County against the Debtor alleging, among other things, fraud, theft, and breach of contract. The Debtor sought a restraining order against the Plaintiff. The State Court entered an injunction order enjoining the Plaintiff from committing any acts of violence against the Debtor and having any contact with him.

### Dischargeability Analysis

The Debtor filed his Chapter 7 bankruptcy case on March 21, 2008 and any pending State Court litigation or collection actions were stayed by the automatic stay of 11 U.S.C. Section 362(a). The Plaintiff asserts the loans plus accrued interest constitute a

---

[9] Id.
[10] Plaintiff's Ex. No. 5.

nondischargeable debt based upon the Debtor's fraudulent inducements. He requests a nondischargeability judgment of $155,000.00 or $165,000.00, plus interest, and punitive damages of "no less than $1,000,000.00."

The Objection constitutes an amendment of the Debtor's original Complaint (Doc. 1).[11] This matter is an 11 U.S.C. Section 523(a)(2)(A) cause of action pursuant to the Order entered on February 26, 2009 (Doc. No. 40). The Plaintiff did not plead any other cause of action in conformity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Federal Rules of Civil Procedure.

The Plaintiff asserts the following evidence establishes the Debtor's fraudulent behavior: (i) the Plaintiff's recollection of the parties' conversation at the networking event; (ii) statements made by the Debtor regarding the $55,000.00 loan; (iii) printouts of information from various websites regarding the Debtor; (iv) various email communications from the Debtor and his bankruptcy counsel; and (v) a hearing transcript and unsigned orders relating to the State Court litigation.

The Plaintiff has the burden to establish by a preponderance of the evidence the Debtor made a false statement with the intent to deceive the Plaintiff and the Plaintiff justifiably relief upon such falsehood resulting in damages suffered by the Plaintiff.

The Plaintiff asserts the Debtor represented at the networking event he was an expert in real estate investments, was a very successful real estate investor, and had already closed several real estate deals. He asserts the Debtor stated to him:

---

[11] The Objection was stricken by the Order entered on March 31, 2009 (Doc. No. 50). The Objection appeared to be the Plaintiff's untimely filed statement of the case which the February 26, 2009 Order directed him to file and such statement was not to exceed three pages double-spaced. The Plaintiff later explained the Objection was intended to be his Amended Complaint. The Objection is hereby reinstated as Doc. No. 45.

a.  He had obtained considerable expertise in his business of buying and selling houses as the result of attending seminars virtually nonstop for two years.

b.  He had gained considerable experience in his business activities, in that he had been buying property, and fixing up said property, with his own money, and that of investors, and then reselling the property, for a profit, which he had been doing full time for over two years, and was very successful.

c.  He represented that part of his game plan was to make money by making short sales, which he had done very successfully.

d.  He represented that part of his 'game plan' was to make money by successfully whole selling property, and making money in such fashion.

e.  He had at that time nine or ten properties in his portfolio and was accumulating and selling property on a regular basis, also with the assistance of other investors.

f.  He was very successful and he was on his way to being a millionaire like his two brothers.

g.  He, in addition to using his own money, had a number of investors, who were paid fourteen percent or fifteen percent for their investments.

h.  He would pay the Plaintiff fourteen percent interest on his money if the Plaintiff wanted to become a secured investor.

The Plaintiff asserts these statements caused him to believe the Debtor had an existing successful real estate investment business and they induced him to make the $100,000.00 loan. He asserts the Debtor's representations were falsehoods.

The Debtor denied he made any false statements to the Plaintiff. He explained to the Plaintiff at the networking event he had acquired expertise in real estate matters by attending seminars and the intent of his real estate investment business was to acquire properties and flip them for a profit. He explained to the Plaintiff he was looking for

investors to invest in his business and had "eight or nine deals" "in the pipeline," but none of the property acquisition contracts had closed yet.

The Debtor testified the pending acquisitions were for properties in foreclosure. Two acquisitions eventually closed, with one of them being the Property. The $100,000.00 loan was used for the purchase and renovation of the Property, which is a lower-end property. The Debtor believed the Property had a value of $140,000.00 to $150,000.00 after renovation and intended to sell the Property to generate a profit. He, upon the advice of counsel, titled the Property in the name of the Trust.

The only investor who invested in his real estate investment business was the Plaintiff. His business went under when the real estate market collapsed and as a result he stopped making loan payments to the Plaintiff in the fall of 2007.

The Debtor's testimony regarding the representations he made to the Plaintiff at the networking event was credible and consistent with his testimony at his Section 341 meeting of creditors.[12] He did not misrepresent to the Plaintiff the status of his real estate investment business, his experience in real estate investments, or the pending real property transactions. He did not make any misrepresentations to the Plaintiff at the networking event or in relation to the $100,000.00 loan.

The Debtor made a misrepresentation to the Plaintiff regarding the $55,000.00 loan. He told the Plaintiff in early 2007 he needed a loan of $55,000.00 for business expenses including the hiring of an office assistant. He promised to pay interest at the rate of sixteen percent on the loan. The Debtor knew he would have to use some of the loan funds for non-business expenses, when he requested the loan. His statement the loan

---

[12] Plaintiff's Ex. No. 10, pp. 4, 10-11, 17- 20; Plaintiff's Ex. No. 9, pp. 25-28, 35.

would be used for business purposes was a misrepresentation made with the intent to deceive the Plaintiff.

The Debtor admitted he used approximately $15,000.00 of the $55,000.00 loan to pay personal expenses and to make interest payments on the first loan. He used the balance of the loan, $40,000.00, for expenses related to his real estate investment business including marketing and seminars.

The Plaintiff justifiably relied on the misrepresentation and transferred $55,000.00 to the Debtor. The Plaintiff's loan was an investment in the Debtor's business. The Plaintiff intended the $55,000.00 to be used for business expenses. The Debtor used $40,000.00 of the loan in accordance with that intent. The Plaintiff incurred damages to the extent the funds were not used for business purposes. The funds expended by the Debtor on personal expenses, $15,000.00, constitute the Plaintiff's damages.

The Plaintiff suffered damages of $15,000.00 as a result of his reliance on the Debtor's misrepresentation. The Plaintiff has established by a preponderance of the evidence a debt of $15,000.00 is nondischargeable.

### Exhibits Lacking Relevancy

The Internet printouts, email communications, and documents relating to the State Court litigation presented by the Plaintiff are not relevant to the dischargeability analysis. The Internet printouts were printed in 2009.[13] One of the printouts is a solicitation by the Debtor for investors in which he asserts he has net income of $4,850.00 per month and monthly expenses of $4,079.00. The Plaintiff admitted he did not obtain or review the

---

[13] Plaintiff's Ex. No. 1.

Internet information prior to making the loans to the Debtor. He did not rely on the Internet information in making the loans.

The email communications are dated July 2007 through June 2008, with the exception of one email dated December 17, 2006.[14] The 2007 and 2008 emails consist of communications: (i) from the Plaintiff to the Debtor demanding payment of the loans; (ii) from the Debtor to the Plaintiff setting forth his attempts to sell the Property to generate funds to repay the loans; and (iii) from the Debtor's bankruptcy counsel to the Plaintiff attempting to resolve this matter. The December 17, 2006 communication is an email from the Debtor to the Plaintiff in which he thanks the Plaintiff for his "offer to fund some of my real estate deals" and discusses setting up an escrow account.

The Plaintiff did not rely upon the email communications in making the loans. The communications do not contain any admissions or statements against interest made by the Debtor other than the Debtor's admissions he owes the Plaintiff $100,000.00 and $55,000.00.

The Plaintiff presented a transcript purportedly created from a recording of a hearing in the State Court litigation.[15] The transcript is undated, incomplete, and contains several portions marked "inaudible." The orders presented by the Plaintiff are unsigned.[16] One order appears to be a proposed order submitted by the Plaintiff to the State Court *ex parte* and the second order purports to have been signed by "George A. Sprinkle, IV, Circuit Judge," but bears no signature, date, or entry stamp.[17]

---

[14] Plaintiff's Ex. No. 4.
[15] Plaintiff's Ex. No. 8.
[16] Plaintiff's Ex. No. 6.
[17] Id.

No entered order was presented in which the State Court made specific findings relevant to the nondischargeability elements. The documents presented by the Plaintiff have no res judicata or collateral estoppel effect and are not subject to the Rooker-Feldman doctrine.

### Dischargeability Conclusion

The Plaintiff has not established by a preponderance of the evidence the debt of $100,000.00 for the first loan was incurred by the Debtor through false pretenses or fraud. The Plaintiff did not establish by a preponderance of the evidence the Debtor made a false representation intended to deceive him upon which the Plaintiff justifiably relied and sustained a resulting loss. The indebtedness owed by the Debtor to the Plaintiff relating to the $100,000.00 loan is dischargeable and due to be discharged.

The Plaintiff established $15,000.00 of the $55,000.00 loan was incurred by the Debtor through false pretenses. The Debtor made a false representation intended to deceive the Plaintiff upon which the Plaintiff justifiably relied and sustained a resulting loss of $15,000.00. The indebtedness of $15,000.00 owed by the Debtor to the Plaintiff is nondischargeable.[18] All other indebtedness resulting from the March 2007 loan is dischargeable and is due to be discharged.

The Plaintiff established no factual or legal basis for an award of punitive damages against the Debtor. His punitive damages request is due to be denied.

---

[18] The Debtor obtained a discharge on April 24, 2009 pursuant to the Discharge of Debtor Order. The Plaintiff asserted the entry of the discharge violated his due process rights. The discharge did not affect this adversary proceeding. The Discharge of Debtor Order specifically states: "Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged."

The Plaintiff is not without recourse regarding the Property. He holds a first priority mortgage lien on the Property and may enforce his rights as a lien holder pursuant to the Mortgage Deed and Florida statutory law.

### *Sanctions Motions*

The parties filed various pleadings during the discovery phase of this proceeding in which they request the imposition of sanctions against each other (Doc. Nos. 34, 35, 37, 38). Neither party acted in good faith during the discovery phase.

The Plaintiff propounded multiple extensive written discovery requests on the Debtor including interrogatories, document requests, and requests for admissions. Many of the requests sought irrelevant and highly personal information. The Plaintiff attempted to use the discovery process to harass and bully the Debtor. The Debtor refused to respond to many of the discovery requests and provided insufficient or no responses to legitimate discovery requests. The parties made defamatory statements regarding each other.

The Court, in open court with both parties present, forewarned the parties their abusive conduct would not be tolerated, yet the conduct continued. The Court struck all outstanding discovery requests and responses pursuant to the February 26, 2009 Order and its authority to sanction parties for discovery abuses. It enjoined the parties from filing any documents:

> Plaintiff and Defendant are hereby enjoined from filing any pleadings or documents in this adversary proceeding unless such filing has been specifically directed by this Order or leave of Court has been granted.

13

Doc. No. 40 at p. 4. The Order directed the Plaintiff to file a statement of the case not to exceed three pages with double-spaced lines. The Plaintiff did not comply with the February 26, 2009 Order.

The Plaintiff was barred from conducting any further discovery pursuant to the Order entered on March 10, 2009 (Doc. No. 43). The Debtor was directed to file the discovery he required to defend himself. The Debtor did not comply with the March 10, 2009 Order. The Court enjoined the parties from communicating with each other without leave of Court pursuant to the Order entered on March 23, 2009 (Doc. No. 47).

The March 23, 2009 Order set this matter for trial and directed the parties to comply with the Local Rules, including Local Rule 5072-1 addressing courtroom decorum and Local Rule 9070-1 regarding exhibits. The Order advised the parties their failure to comply with the Local Rules or any Order of the Court would result in the imposition of sanctions against them pursuant to 11 U.S.C. Section 105(a), Local Rule 9011-3, and/or any other applicable sanctioning authority of this Court.

Neither party abided by the Court's Orders or the Local Rules. Their conduct has been shameful. This Court has authority to impose sanctions against both the Plaintiff and the Debtor for their multiple transgressions. The parties' sanctions requests are due to be denied.

### Unauthorized Submissions

The Plaintiff submitted to the Court a number of documents in violation of the filing injunction imposed by the February 26, 2009 Order. He filed a Letter (Doc. No. 46) with twenty-eight pages of attachments including an article entitled "Disqualification

14

of Judges" and containing numerous insertions of hand-written commentary by the Plaintiff. He concluded his letter with:

> I just started researching the requirements for seeking your disqualification, as a minimum for not demonstrating impartiality, and leading an objective observer to believe that you are not, or will not be, fair to me. See attached on [t]he subject.

> Quite frankly your conduct and actions scare me!

Doc. No. 46 at p. 2. The Letter was filed in violation of the February 26, 2009 and March 10, 2009 Orders and was stricken pursuant to the Order entered on March 31, 2009 (Doc. No. 50). No reconsideration or appeal of the February 26, 2009, March 10, 2009, or March 31, 2009 Orders was sought.

The Plaintiff blatantly ignored the Orders and submitted five pleadings:

(i)     May 7, 2009: Verified Motion to Disqualify the Judge, for Clarification, and for Rehearing and Reconsideration of Rulings that Clearly Denied Due Process (Before New and Impartial Judge).

(ii)    May 27, 2009: A letter in which the Plaintiff stated he intended "to file another pleading, hopefully this week" and requested the Court defer the entry of any rulings.

(iii)   June 1, 2009: Renewed Motion to Disqualify Bankruptcy Trial Judge, or for Alternative Relief.

(iv)    June 29, 2009: Renewed Verified Motion to Disqualify the Judge, Motion to Compel Discovery, and Motion to Continue so as to Allow the Plaintiff to Conduct Discovery, Which is a Constitutional Right.

(v)     July 20, 2009: Notice of Filing of Exhibits, Two for Impeachment, and Motion to Withdraw Exhibit for Copying.

The Debtor submitted two filings: A letter on July 14, 2009 seeking dismissal of the adversary proceeding and a letter on July 20, 2009 regarding asset disclosures.

15

The parties' submissions were not specifically directed by an Order of this Court nor was leave of Court granted for such submissions. The parties filed the submissions in violation of the February 26, 2009 and March 10, 2009 Orders. The Submissions are unauthorized filings and have not been docketed in the CM/ECF system.

The various relief requested in the submissions would have been denied if the submissions had been appropriately filed. The parties' submissions were not presented in good faith, are devoid of substance, and have no factual or legal support. The Plaintiff's submissions are the result of his displeasure with the Court's Orders. His recusal requests are unfounded. The impartiality of the undersigned could not reasonably be questioned by a well-informed third person with knowledge of all the facts.

## CONCLUSIONS OF LAW

### 11 U.S.C. Section 523(a)(2)(A)

The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Exceptions to discharge "should be strictly construed against the creditor and liberally in favor of the debtor." Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

The Plaintiff's Objection constitutes his amended Complaint. The sole cause of action is an 11 U.S.C. Section 523(a)(2)(A) cause of action. The Plaintiff did not plead any other cause of action in conformity with the February 26, 2009 Order, Bankruptcy Code, Federal Rules of Bankruptcy Procedure, or Federal Rules of Civil Procedure.

16

Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

The Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (i) the Debtor made a false representation to deceive the Plaintiff; (ii) the Plaintiff relied on the misrepresentation; (iii) the reliance was justified; and (iv) the Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). He must establish each of the four elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995).

The reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

17

The Plaintiff did not establish the Debtor made any false representations with the intent to deceive him at the time the $100,000.00 loan was made. The loan transaction arose through verbal promises. The Debtor truthfully represented to the Plaintiff the status of his real estate investment business, his experience in real estate investments, and the pending real property acquisitions. He truthfully represented he would use the Plaintiff's loan to purchase an investment property and the Plaintiff would have a security interest in the property.

The Debtor intended to fulfill his promises at the time the loan was made. He used the $100,000.00 for the Property's acquisition and renovation. The Plaintiff was granted a security interest in the Property. The Debtor made monthly interest payments to the Plaintiff. The Debtor later breached his payment promises due to the downtown of the market.

The Debtor did not make any misrepresentations to the Plaintiff in relation to the $100,000.00 loan. The Plaintiff, by failing to establish the first nondischargeability element, failed to establish the second, third, and fourth elements. The indebtedness resulting from the $100,000.00 loan is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a).

The Plaintiff established the indebtedness of $15,000.00 arising from the March 2007 loan is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A). The Debtor falsely represented the funds would be used for business expenses. The Debtor knew at the time he made the representation he would have to use some of the funds for personal expenses. He made the false statement with the intent to deceive the Plaintiff and the Plaintiff justifiably relied on the misrepresentation.

18

The Plaintiff lent $55,000.00 to the Debtor with the intent and understanding those funds would be used for business expenses. The Debtor used $40,000.00 of the loan for expenses related to his real estate investment business and he expended $15,000.00 on personal expenses. The Plaintiff sustained a loss of $15,000.00 as a result of the Debtor's misrepresentations. The debt of $15,000.00 is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A).

All other indebtedness resulting from the March 2007 loan is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a).

### *Punitive Damages and Discovery Sanctions*

The Plaintiff requests an award of punitive damages against the Debtor, but presented no legal authority for such request. The sole cause of action before the Court is an 11 U.S.C. Section 523(a)(2)(A) dischargeability action. Section 523(d) of the Bankruptcy Code provides for an award of sanctions to a debtor in certain circumstances where a consumer debt is at issue. Section 523 contains no provision for the award of damages to a plaintiff. The Plaintiff has established no basis for an award of punitive damages and the request is due to be denied.

Each party requests sanctions be imposed against the other for discovery abuses. The parties acted in bad faith during the discovery phase of this proceeding. They were provided fair notice their conduct could warrant sanctions and the reasons why. In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1306-1307 (11th Cir. 2006). Their continued bad faith conduct resulted in the entry of the various Orders curtailing discovery,

enjoining the parties from filing pleadings or documents without leave of Court, striking filings, and enjoining them from communicating with each other.

The Court was authorized to enter the February 26, March 10, March 23, and March 31, 2009 Orders pursuant to 11 U.S.C. Section 105(a), Federal Rules of Civil Procedure 26 and 37, Local Rule 9011-3, and the Court's inherent powers. The Court, pursuant to these authorities, is authorized to impose sanctions against the parties for their bad faith and recalcitrant conduct.

Both parties are equally culpable. Neither party is entitled to an award of sanctions. The parties' sanctions motions are due to be denied.

### Unauthorized Filings

The parties' May 7, May 27, June 1, June 29, July 14, and July 20, 2009 submissions are unauthorized filings pursuant to the Court's February 26, March 10, March 23, and March 31, 2009 Orders. The relief requested in the submissions has no factual or legal support and would be denied had the submissions been filed in accordance with the Court's Orders.

The Plaintiff's submissions, particularly his recusal requests, were presented in retaliation of and as a collateral attack upon rulings adverse to the Plaintiff. The standard for recusal based on a claim of lack of impartiality is objective reasonableness. Cheney v. U.S. Dist. Court for D.C., 541 U.S. 913, 924 (2004). Recusal is appropriate where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. Microsoft Corp. v. U.S., 530 U.S. 1301, 1301 (2000). A reasonable person with knowledge of all the facts would not conclude

the undersigned's impartiality might reasonably be questioned pursuant to 28 U.S.C. Section 455(a).

The February 26, March 10, March 23, and March 31, 2009 Orders were issued to achieve an orderly and expeditious disposition of this adversary proceeding. The Orders are final orders and binding on the parties. The Court has statutory and inherent powers to enforce the Orders and to impose sanctions for noncompliance. 11 U.S.C. § 105(a); Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1575 (11th Cir. 1995). The Court has discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." In re Mroz, 65 F.3d at 1575.

The parties' submissions violate the Orders and do not constitute properly filed pleadings. The parties presented the submissions in bad faith and they abused the judicial process. The submissions, pursuant to 11 U.S.C. Section 105(a) and the Court's inherent powers, shall not be docketed in CM/ECF or considered by the Court.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the indebtedness arising from the December 2006 $100,000.00 loan is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a); and it is further

**ORDERED, ADJUDGED and DECREED** that the indebtedness of $15,000.00 arising from the March 2007 $55,000.00 loan is **NONDISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A) and all other indebtedness arising from the March 2007 loan is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a); and it is further

21

**ORDERED, ADJUDGED and DECREED** that the Plaintiff's request for punitive damages is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the parties' requests for sanctions contained within Doc. Nos. 34, 35, 37, 38 are hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the parties' submissions of May 7, May 27, June 1, June 29, July 14, and July 20, 2009 are unauthorized filings and shall not be docketed in CM/ECF or considered by the Court.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this ⊥⊥TH day of September, 2009.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge